# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| BGC PARTNERS INC., G&E ACQUISITION COMPANY, LLC, *and* NEWMARK SOUTHERN REGION LLC, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:15-cv-02057-DCN |
| vs. | ) ) ) | **ORDER** |
| AVISON YOUNG (CANADA) INC., AVISON YOUNG (USA) INC., AVISON YOUNG – ATLANTA, LLC, MARK ROSE, CHRISTOPHER FRASER, *and* WRS REAL ESTATE, LLC, f/k/a BARKEYFRASER.COM LLC, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter comes before the court on plaintiffs BGC Partners, Inc. ("BGC"), G&E Acquisition Company, LLC ("G&E Acquisition"), and Newmark Southern Region, LLC's ("Newmark") (collectively "plaintiffs") motion to remand or to abstain.[1] For the reasons set forth below, the court grants plaintiffs' motion, abstains from hearing plaintiffs' claims, and remands the case to the Court of Common Pleas for Charleston County.

---

[1] BGC is a Delaware corporation with its principal place of business in New York. Compl. ¶ 8. G&E Acquisition is a Delaware limited liability company with its principal place of business in New York. Id. ¶ 9. G&E Acquisition is an indirect subsidiary of BGC. Id. Newmark is an indirect subsidiary of BGC with a principal place of business in Atlanta. Id. ¶ 13.

1

## I. BACKGROUND[2]

Grubb & Ellis Company ("Grubb & Ellis"), one of the largest real estate brokerages in the United States, filed for bankruptcy on February 20, 2012 in the United States Bankruptcy Court for the Southern District of New York. Compl. ¶ 1. BGC, through its indirect subsidiary G&E Acquisition, purchased substantially all of the assets of Grubb & Ellis after it filed its bankruptcy petition. Id. ¶ 2. Plaintiffs allege that defendant Mark Rose ("Rose")—current Chairman and Chief Executive Officer of Avison Young and former President of Grubb & Ellis—and the other defendants "began an aggressive hiring campaign in the U.S. and embarked on a scheme to target and steal Grubb & Ellis affiliates throughout the U.S." Id. ¶ 3. Plaintiffs further allege that "[i]n doing so, Avison Young has tortiously and illegally converted Grubb & Ellis's commissions, personnel, offices, business, trade secrets, and business opportunities." Id.

On August 2, 2012, BGC commenced an action against the defendants in the Supreme Court of New York, New York County, bringing seven state-law claims against various Avison Young defendants, including defendants Avison Young (Canada), Inc., Avison Young (USA) Inc., and Avison Young – Atlanta LLC. BGC Partners, et al. v. Avison Young (Canada) Inc., et al., No. 652669/2010 (N.Y. Sup. Ct. Aug. 2, 2012). Defendants filed a notice of removal to the United States District Court for the Southern District of New York, asserting the following two grounds for removal: (1) complete diversity; and (2) that the case is "related to" a pending bankruptcy proceeding under 28

---

[2] On a motion to remand for lack of subject matter jurisdiction, the court may consider materials outside of the complaint including "documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis" and may assume the truth of facts raised in the complaint that are non-jurisdictional. Romano v. Kazacos, 609 F.3d 512, 520, 520 n.4 (2d Cir. 2010).

U.S.C. §§ 1334(b) and 1452(a).[3]  Pls.' Mot. 6.  The Southern District of New York held that abstention was mandatory under 28 U.S.C. § 1334(c)(2) and remanded the case back to New York state court.  BGC Partners, Inc. v. Avison Young (Canada), Inc., 919 F. Supp. 2d 310, 320 (S.D.N.Y. 2013) ("Therefore, because all the factors of 28 U.S.C. § 1334(c)(2) are satisfied, abstention is mandatory.").[4]  After the district court remanded the case, the state court dismissed the defendants in the present action for lack of personal jurisdiction.  Pls.' Mot. 6.  On December 23, 2014, the bankruptcy court entered a final decree closing the Grubb & Ellis bankruptcy case.  Id. Ex. 2.

Plaintiffs filed the present action on April 10, 2015 in the Court of Common Pleas for Charleston County, bringing the following state law causes of action:  (1) tortious interference with contractual relationships; (2) civil conspiracy; (3) misappropriation of trade secrets in violation of the South Carolina Trade Secrets Act, §§ 39-8-10, et seq.; (4) violation of South Carolina Unfair Trade Practices Act ("SCUPTA"), §§ 39-5-10, et seq.; (5) breach of contract; (6) breach of contract accompanied by a fraudulent act; (7) breach of fiduciary duty; (8) aiding and abetting a breach of fiduciary duty; (9) conversion; (10) unjust enrichment; (11) constructive trust; and (12) accounting.

On May 18, 2015, Defendants Avison Young (Canada) Inc., Avison Young (USA) Inc., Avison Young – Atlanta, LLC, and Rose (collectively "Avison Young"), with the consent of defendants Christopher Fraser ("Fraser") and WRS Real Estate LLC

---

[3]  Notably, defendants did not assert "arising under" jurisdiction as they do in the present matter.

[4]  The New York action involved some different parties.  However, plaintiffs BGC and G&E Acquisition were both involved in the New York action, as well as defendants Avison Young (Canada), Inc., Avison Young (USA) Inc., and Avison Young – Atlanta LLC.  See BGC Partners, Inc. v. Avison Young (Canada), Inc., 919 F. Supp. 2d 310 (S.D.N.Y. 2013)

("WRS"), (collectively with Avison Young "defendants") filed a notice of removal in this court pursuant to 28 U.S.C. § 1446. Defendants assert that the court has subject matter jurisdiction because the case is "related to" a pending bankruptcy proceeding and/or it arises under Title 11. Notice of Removal 3–5. Defendants further assert that the court has jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441(a) because there is complete diversity of citizenship between the parties and the matter in controversy exceeds $75,000.00. Id. at 5–8.

Plaintiffs filed the present motion to remand or abstain on June 17, 2015. Defendants filed a response in opposition to the motion to remand on July 2, 2015, and plaintiffs replied on July 13, 2015. Plaintiffs filed additional attachments to their motion on July 23, 2015 to notify the court of an order from the United States District Court for the District of Columbia in which the court remanded a case with identical, or almost identical, parties.[5] Pls.' Add. Attachment, Ex. A ("Finding that the case does not 'arise in' the bankruptcy proceedings, that abstention is required even if the case is 'related to' the bankruptcy, and that diversity is lacking, the Court will award this round of the bout to BGC and remand the case to D.C. Superior Court."). Defendants filed additional attachments on October 16, 2015 to notify the court of its pending motion for reconsideration of the district court's remand order in the United States District Court for the District of Columbia.

---

[5] The District of Columbia action involved plaintiffs BGC and G&E Acquisition, as well as defendants Avison Young, Avison Young (USA) Inc., and Mark Rose. BGC Partners, Inc. v. Avison Young (Canada) Inc., 2015 WL 4483952, at *1 (D.D.C. July 22, 2015).

4

The court held a hearing on the motion to remand on October 30, 2015. After the hearing, plaintiffs filed a November 17, 2015 order from the Northern District of Illinois as an additional attachment to the reply in which the court remanded the action to state court. See Pl.'s Sec. Add. Attachment, Ex. A (remanding the case to state court pursuant to § 1334(c)(2)).[6] On November 19, 2015, defendants then filed an additional attachment in response. The motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

The right to remove a case from state court to federal court is derived from 28 U.S.C. § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The party seeking to remove a case from state court to federal court bears the burden of demonstrating that jurisdiction is proper at the time the petition for removal is filed. Caterpillar Inc. v. Lewis, 519 U.S. 61, 73 (1996). If federal jurisdiction is doubtful, remand is necessary. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994); Pohto v. Allstate Ins. Co., No. 10-2654, 2011 WL 2670000, at *1 (D.S.C. July 7, 2011) ("Because federal courts are forums of limited jurisdiction, any doubt as to

---

[6] The Illinois action involved plaintiffs BGC, G&E Acquisition, and Newmark, as well as defendants Avison Young (USA) Inc. and Mark Rose. BGC Partners, Inc., et al. v. Avison Young (Canada) Inc., et al., 2015 WL 7251954, at *1 (N.D. Ill. Nov. 17, 2015). In sum, this action is related to four other pending actions in New York, Nevada, Illinois, and the District of Columbia. The district courts in the New York, Illinois, and District of Columbia actions all remanded the cases back to state court. See id.; 2015 WL 7251954 (N.D. Ill. Nov. 17, 2015); 919 F. Supp. 2d 310 (S.D.N.Y. 2013).

whether a case belongs in federal or state court should be resolved in favor of state court.").

District courts have original diversity jurisdiction over a case "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). When removal is based solely on diversity jurisdiction, however, an otherwise-removable case "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Federal law also requires that "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction[7] must be made within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c).

### III. DISCUSSION

Plaintiffs argue that removal was improper because there is an absence of complete diversity, the forum defendant rule bars removal, and there is no bankruptcy-related jurisdiction. Plaintiffs further argue that even if there is jurisdiction under 28 U.S.C. § 1334(b), the court must abstain from exercising jurisdiction pursuant to 28 U.S.C. § 1334(c)(2), or alternatively, should exercise its discretion and abstain pursuant to 28 U.S.C. § 1452(b).

#### A.    Diversity Jurisdiction

Although defendants originally argued that removal was proper on the basis of diversity jurisdiction, Defs.' Resp. 8, during the October 30, 2015 hearing defendants

---

[7] Section 1447(c) explains that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

conceded that there was no diversity of citizenship. Hr'g Tr. 19:12–18 (The Court: But you agree that on a pure—forget about the bankruptcy alright—on a pure diversity of citizenship if that was the only thing at issue, you do not have diversity of citizenship in this case? Answer: If there were no allegations of subject matter jurisdiction, federal subject matter jurisdiction, yes, we concede that."). However, in an effort to differentiate the court's holding in the Illinois action, defendants again contend that diversity jurisdiction exists in the instant action. See Add. Attachment 4 ("Unlike the case underlying in the Illinois Opinion, Defendants contend that diversity jurisdiction exists in the instant action."). Therefore, the court will briefly address defendants' diversity arguments.

District courts have original diversity jurisdiction over a case "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). In order for a district court to exercise jurisdiction, the parties must be completely diverse. Caterpillar, 519 U.S. at 68. The party seeking removal has the burden of establishing jurisdiction. Woodward v. Newcourt Comm. Fin. Corp., 60 F. Supp. 2d 530, 531 (D.S.C. 1999). Limited liability corporations are citizens of every state in which their members are citizens. Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 121 (4th Cir. 2004).

In its notice of removal, Avison Young represents that defendants are citizens of Canada, Georgia, Illinois, Maryland, North Carolina, South Carolina, and Tennessee. Notice of Removal 6. Specifically, Avison Young represents that: (1) Avison Young (Canada) Inc. is a Canadian corporation with its principal place of business in Ontario, Canada, id. ¶ 18; (2) Avison Young (USA) is an Illinois Corporation with a principal

place of business in Illinois., id. ¶ 19; (3) Avison Young – Atlanta is a Georgia limited liability company whose members are citizens of Georgia, Illinois, Maryland, North Carolina, and Tennessee, id. ¶ 20; (4) WRS is a South Carolina limited liability company with a principal place of business in Mt. Pleasant, South Carolina and whose members are South Carolina citizens, id. ¶ 21; (5) Rose is a citizen of Illinois, id. ¶ 22; and (6) Fraser is a citizen of South Carolina, id. ¶ 22.

BGC submitted numerous declarations to establish the citizenship of plaintiffs. In the first declaration, Treasa Chennikara ("Chennikara")—a paralegal and contracts manager at Cantor Fitzgerald Securities tasked with the responsibility of maintaining and overseeing records related to Cantor Fitzgerald Securities and its parents, subsidiaries, and affiliates, including the plaintiffs—stated the following:  G&E Acquisition (a plaintiff) has one member, BGC Partners, L.P., a limited partnership with two partners, BGC Partners, Inc. (a plaintiff) and BGC Holdings, L.P.  Pls.' Mot. Ex. 2.  BGC Partners, L.P. is a Delaware Corporation with its principal place of business in New York.  Id. Chennikara further stated that Newmark has one member, NGA, LLC, a Georgia limited liability company.  Id.  NGA, LLC has one member, BGC Partners, L.P.  Id.

BGC submitted the second declaration of Mark Prasad ("Prasad") who is tasked with the responsibility of overseeing the partnership department that administers the partnership program for BGC Holdings, L.P. at Cantor Fitzgerald Securities.  Pls.' Mot. Ex. 4, Prasad Depo. ¶ 2.  Prasad declared that at all times relevant to the issue of diversity of citizenship in this case, specifically between April 1, 2015 and June 1, 2015, BGC Holdings, L.P. had a number of partners who are citizens of Georgia, Illinois, North Carolina, and South Carolina.  Prasad Depo. ¶ 3.

Avison Young argues that the declarations are insufficient because they include conclusory allegations. Avison Young further argues that plaintiffs' refusal to submit underlying business records to support the lack of complete diversity arguments is fatal to their arguments. Avison Young requests an opportunity to "conduct limited jurisdictional discovery to determine the veracity of the factual assertions contained in Plaintiffs' conclusory declarations." Defs.' Resp. 27. The court does not find limited discovery necessary under these circumstances. The allegations are not conclusory because they are supported by multiple declarations from people tasked with the responsibility of knowing the partners and/or members of the various entities. Notably, Judge Cooper from the United States District Court for the District of Columbia found Prasad's declaration sufficient to establish the citizenship of the plaintiffs. BGC Partners, Inc. v. Avison Young (Canada) Inc., 2015 WL 4483952, at *4. Plaintiffs provided this court with more than one declaration to establish citizenship from people with personal knowledge of plaintiffs' partners' citizenship; therefore, plaintiffs' declarations are sufficient to establish citizenship.

BGC Holdings L.P., a partner of plaintiff G&E Acquisition, is a limited partnership with partners between April 1, 2015 and June 1, 2015 who are citizens of Georgia, Illinois, North Carolina, and South Carolina. Chennikara Depo. ¶¶ 4–5; Prasad Depo. ¶ 3. Defendant Avison Young – Atlanta, LLC has members who are citizens of Georgia, Illinois, North Carolina, and Tennessee. Notice of Removal ¶ 20. Further,

defendant WRS is a limited liability company whose members are citizens of South Carolina. Id. ¶ 21. Therefore, there is no complete diversity under § 1332.[8]

### B.  Bankruptcy-Related Jurisdiction

Section 1334(b) provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).

Defendants argue that "one need only skim the Complaint to see that it is 'related to' and 'aris[ing] under' a bankruptcy proceeding" because is alleges that:  (1) defendants stole and/or received a benefit from the bankruptcy estate; (2) defendants improperly violated the automatic stay; and (3) if recovery in this and other similar actions exceeds $20 million, there will be additional funds made available to the debtor's estate.  Defs.' Mot. 7–9.  Therefore, defendants contend that this court has subject matter jurisdiction under 28 U.S.C. § 1334(b).  Defs.' Resp. 7.

#### 1.  "Arising Under"

In the notice of removal, defendants first argue that because the complaint asserts a claim based on purported violations of the automatic stay in the bankruptcy of Grubb & Ellis, the claims "arise under" title 11.  Notice of Removal 5.

---

[8]   Additionally, plaintiffs argue that even if the court found that there was complete diversity, the forum defendant rule bars removal.  Under 28 U.S.C. § 1441(b), a defendant may not remove a matter to federal district court on the basis of diversity jurisdiction if any of the defendants is a citizen of the forum state.  Defendants acknowledge that WRS is a limited liability company whose members are citizens of South Carolina.  Notice of Removal ¶ 21.  However, defendants argue that the forum defendant rule does not bar removal because the case is not removable solely on the basis of diversity, but is also removable as a federal question on the basis of bankruptcy jurisdiction.  Defs.' Resp. 34.  As fully set forth below, plaintiffs' claims do not "arise under" or "arise in" bankruptcy law.  However, plaintiffs' claims may "relate to" the bankruptcy case.  Therefore, the forum-defendant rule does not bar removal.

"To determine whether a proceeding 'arises under' title 11, [courts] apply the same test used for deciding whether a civil action presents a federal question under 28 U.S.C. § 1331." In re Poplar Run Five Ltd. P'ship, 192 B.R. 848, 855 (Bankr. E.D. Va. 1995). Therefore, "arising under" jurisdiction extends to "'only those cases in which a well-pleaded complaint establishes either that federal [bankruptcy] law creates the cause of action or that the plaintiffs' right to relief necessarily depends on resolution of a substantial question of federal [bankruptcy law]." Id. (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27–28 (1983)).

Defendants argue that plaintiffs "explicitly assert a claim based on purported violations of the automatic stay imposed by Grubb & Ellis's bankruptcy." Defs.' Resp. 9. Therefore, defendants argue that plaintiffs' claims arise under the Bankruptcy Code. Id. (citing In re Johnson, 2002 WL 31094142 (Bankr. D.S.C. July 31, 2002) ("Applying this test to Plaintiff's complaint, the Court concludes it has subject matter jurisdiction over this adversary proceeding as Debtor raises two causes of action that the Bankruptcy Code created, a violation of the automatic stay and a violation of the discharge injunction."")).[9]

---

[9] Defendants also cite Koffman v. Osteoimplant Tech., Inc., 182 B.R. 115, 125 (D. Md. 1995) to argue that plaintiffs' claims arise under the Bankruptcy Code. However, the Koffman court addressed whether the plaintiff's state law claims based on bad faith bankruptcy filings or violations of the automatic stay were preempted by the Bankruptcy Code. Id. (emphasis added). The bankruptcy judge had abstained from hearing the case and state tort claims were later filed in the district court. Id. at 120 ("[The Bankruptcy Judge] noted his understanding that the effect of his abstaining from the proceedings under section 305 was that 'there will not be any claims against the petitioning creditors for bringing these petitions. There will not be claims for damages, and there will not be claims for counsel fees.'"). The district court held that the state law claims were preempted by the Bankruptcy Code and that because the bankruptcy judge abstained from addressing the merits of the case, the state law claims could not proceed. Id. at 127–28. ("Allowing state tort actions based on allegedly bad faith bankruptcy fillings or violations of the automatic stay to go forward ultimately would have the effect of permitting state

In response, plaintiffs argue that although the factual allegations of the complaint do contend that certain of defendants' actions violated the automatic stay, plaintiffs do not assert a <u>cause of action</u> for violation of the automatic stay under the Bankruptcy Code. Pls.' Reply 3. (citing <u>In re Simmons</u>, 237 B.R. 672, 677 (Bankr. N.D. Ill. 1999) ("[D]ebtor insists that jurisdiction exists because the claims require 'reference to the Bankruptcy Code and implementing rules.' . . . [However,] reference to the provisions and policy of the Bankruptcy Code, alone, is not enough to confer 'arising under' jurisdiction. . . . In sum, although counts II and III allege that fraudulent conduct occurred during a bankruptcy proceeding, at heart these counts assert causes of action that are created and will be determined by state law. The court concludes, therefore, that the class claims contained in counts II and III do not arise under title 11.")).

Plaintiffs' complaint only asserts state law claims. Further, plaintiffs' right to relief does not depend on an interpretation of a substantive question of federal bankruptcy law. While the Bankruptcy Code does provide a cause of action for a debtor to recover damages for violation of an automatic stay pursuant to 11 U.S.C. § 362(k), <u>Miller v. District of Columbia</u>, 2007 WL 1748890, at *4 (D.D.C. June 18, 2007), plaintiffs do not bring a cause of action pursuant to the aforementioned section, but rather only assert that

---

law standards to modify the incentive structure of the Bankruptcy Code and its remedial scheme. Because such a result threatens to erode the exclusive federal authority in this area, and because it would threaten the uniformity of federal bankruptcy law, the Court finds that [defendant's] state tort [counterclaims] are preempted by the federal Bankruptcy Code."). Needless to say, <u>Koffman</u> did not involve a motion to remand or abstain and is therefore not relevant to the court's analysis of the present motion. The state court may later decide that some of plaintiffs' state law claims are preempted by federal bankruptcy law; however, that is not a determination that must be made at this stage in the litigation.

defendants violated the automatic stay within the factual allegations of the state-law tort claims. While there are numerous references to the Bankruptcy Code in plaintiffs' complaint, "reference to the provisions and policy of the Bankruptcy Code, alone, is not enough to confer 'arising under' jurisdiction," and plaintiffs' requested relief does not necessarily depend on resolution of a substantial question of federal bankruptcy law. Simmons, 237 B.R. at 677. Rather, a determination of whether defendants violated the automatic stay is only incidental to plaintiffs' claims.

Therefore, plaintiffs' claims do not arise under the Bankruptcy Code, nor do they require the court to interpret a substantive question of federal bankruptcy law.

### 2.     "Relate To"[10]

Defendants further assert that plaintiffs' claims "relate to" the bankruptcy case because: (1) plaintiffs allege that defendants unlawfully acquired the assets of the Grubb & Ellis estate; and (2) under the Asset Purchase Agreement between BGC and Grubb & Ellis, the bankruptcy estate can recover a portion of plaintiffs' recovery should they obtain more than $20 million. Defs.' Resp. 22 ("[T]here is virtually no aspect of this case that does not rely on and relate to the proceedings in the underlying bankruptcy. Each of Plaintiffs' twelve causes of action is premised on the rights, contracts, and assets that Plaintiffs allegedly purchased.").

The Supreme Court has explained that:

---

[10]     Although "arising in" jurisdiction provides a separate basis for bankruptcy jurisdiction beyond "arising under" and "related to," defendants do not assert "arising in" jurisdiction. Hr'g Tr. 25:19–24 (The Court: And you said that you are proceeding under arising under and related to so we don't have to worry about arising in; is that right? Answer: That's correct. We are not advancing arising in as a basis for jurisdiction here today.").

> An action is <u>related to</u> bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

<u>Celotex Corp. v. Edwards</u>, 514 U.S. 300, 308 n.6 (1995) (emphasis added). "The 'related to' category is not so broad as to encompass litigation of claims arising under state law or non-bankruptcy federal law that will not have an effect on the bankruptcy estate, simply because one of the litigants filed a petition in bankruptcy." <u>Henneghan v. Columbia Gas (In re Henneghan)</u>, 2005 WL 2267185 at *3 (Bankr. E.D. Va. June 22, 2005) (internal citations omitted).

In <u>New Horizon of N.Y., LLC v. Jacobs</u>, 231 F.3d 143 (4th Cir. 2000), the Fourth Circuit described the test for determining whether a civil case is "related to" a bankruptcy case:

> As the Court stated in <u>Celotex [Corp. v. Edwards</u>, 514 U.S. 300 (1995)], the related to language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate; however, related to jurisdiction cannot be limitless. A civil case filed in a district court is related to a case in bankruptcy <u>if the outcome in the civil case could conceivably have any effect on the estate being administered in bankruptcy[,] . . . if the out-come [sic] would alter the debtor's rights, liabilities, options, or freedom of action (positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate</u>.

<u>Id.</u> at 150–51 (emphasis added).

If plaintiffs recover over $20 million—which is quite possible considering the allegations in the complaint and the related actions pending in various other states—the estate will also recover. However, even if the present action "could conceivably have an[] effect on the estate being administered in bankruptcy," <u>id.</u>

14

at 151, and is therefore "related to" the bankruptcy case under the test outlined in Celotex,[11] plaintiffs' claims may still be subject to mandatory abstention pursuant to § 1334(c)(3). Therefore, the court need not definitively conclude whether plaintiffs' claims relate to the bankruptcy action. The court will assume that the case "relates to" the bankruptcy action for purposes of jurisdiction and then determine whether it must abstain.[12]

### C.     Abstention

Plaintiffs contend that even if plaintiffs' claims relate to the bankruptcy case, the court must abstain. Pls.' Mot. 18–21. Alternatively, plaintiffs argue that the court should exercise its discretion to abstain. Id. at 21–25.

#### 1.     Mandatory Abstention Under 28 U.S.C. § 1334(c)(2)

For purposes of mandatory abstention, the court may assume, without deciding, that plaintiffs' claims "relate to" the bankruptcy action. See Loudin v. J.P. Morgan Trust

---

[11]     The parties argue over whether the "conceivable effect" test outlined in Celotex or the "close nexus" test outlined in In re Resorts Int'l, Inc., 372 F.3d 154 (3d Cir. 2004), should apply under the circumstances. Plaintiffs argue that the close nexus test should apply because the bankruptcy case is already closed. Pls.' Mot. 14–15. Defendants argue that the close nexus test is only applied to determine the bankruptcy court's jurisdiction in the post-confirmation context, but not the district court's jurisdiction. Defs.' Resp. 13. Regardless, the court may assume that the present matter "relates to" the bankruptcy case under either or both tests and then determine whether it must abstain.

[12]     United States District Judge Shira A. Scheindlin in the Southern District of New York determined that although plaintiffs' claims do not arise under bankruptcy law, she could not "say with any certainty that the potential for recovery by the bankruptcy estate if damages exceed twenty million dollars falls outside the 'conceivable effect' test adopted by the Second Circuit." Pls.' Mot. Ex. A, 19. She recognized that "although it is far from certain that any recovery would go to the estate[,] . . . courts have found that even an 'unlikely' possibility that the bankruptcy estate's rights might be altered satisfies the 'conceivable effect' test." Id. However, she determined that it was "unnecessary to prove the limits of the conceivable effect' test because, even assuming that plaintiffs'' claims are 'related to' the bankruptcy proceeding[,]" the court was required to abstain under 28 U.S.C. § 1334(c)(2). Id.

Co., 481 B.R. 388, 392 (S.D.W. Va. 2012) ("[N]ormally, when a case is related to bankruptcy proceedings, 28 U.S.C. § 1334(b) gives the district court jurisdiction to hear the case. However, the district court can only exercise that jurisdiction as long as the requirements for mandatory abstention in § 1334(c)(2) are not met."). Section 1334(c)(2) provides;

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, <u>the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction</u>.

28 U.S.C. § 1334(c)(2) (emphasis added).

If the following six factors are met, the court <u>must</u> abstain: (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is a "non-core", "related to" proceeding; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) the action is commenced in state court; and (6) the action can be timely adjudicated in state court. In re Butterfield, 339 B.R. 366, 372 (Bankr. E.D. Va. 2004) (quoting U.S.C. § 1334(c)(2)).

First, it is undisputed that plaintiffs filed the motion to remand within 30 days of removal. Defendants filed the notice of removal on May 18, 2015, and plaintiffs filed the motion to remand or abstain on June 17, 2015; therefore, it is timely under the first factor. Second, all of plaintiffs' claims are state law claims. Third, as more fully set forth above, plaintiffs' claims do not "arise under" the bankruptcy code. Fourth, as outlined above, section 1334 provides the sole basis for jurisdiction because there is an absence of complete diversity. Fifth, it is

undisputed that plaintiffs commenced the present action in the Court of Common Pleas for Charleston County.

Lastly, the action can be timely adjudicated in state court. Defendants argue that plaintiffs have not met their burden to demonstrate that the matter can be timely adjudicated in state court. Defs.' Resp. 22 (citing Bowles v. Massey Energy Co., 2012 WL 6628953, at *10 (S.D.W. Va. December 19, 2012)).[13] However, courts within the Fourth Circuit have held that "there is a presumption that the state courts operate timely and efficiently and the party seeking abstention is not required to affirmatively prove this facet of the abstention test in the absence of evidence from the opposing party." Power Plant Entm't Casino Resort Ind., LLC v. Mangano, 484 B.R. 290, 298–99 (Bankr. D. Md. 2012) (analyzing the law within the Fourth Circuit and other circuits and finding that the burden is more appropriately placed on the party opposing abstention); see also Commonwealth of Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp., 2015 WL 3540473, at *6 (E.D. Va. June 3, 2015) (holding that burden should be placed on party opposing abstention). Defendants have failed to submit any evidence to demonstrate that the matter cannot be efficiently adjudicated in state court.

Further, "[i]n general, courts focus on whether allowing the state court to hear the matter will have any unfavorable effect on the administration of the

---

[13] The court in Bowles viewed the burden better placed on the party seeking abstention because the court had already established that it had jurisdiction over the action. 2012 WL 6628953, at *10. However, the court further stated that it would "follow the practice of [the Southern District of West Virginia] that the party seeking abstention need not present extraneous evidence in support of this requirement." Id. Therefore, the court in Bowles did not directly hold that the party seeking abstention has the burden of proof to support defendants' contentions.

bankruptcy case." In re Province Grande Olde Liberty, LLC, 2013 WL 2153214, at *3 (Bankr. E.D.N.C. May 17, 2013) (quoting In re 3G Properties, LLC, 2010 WL 4027770, at *3 (Bankr. E.D.N.C. Oct. 14, 2010)).  Therefore, "[e]ven if a related proceeding could be adjudicated in state court in a short time, that adjudication may not be timely 'if that amount of delay would prejudice the bankruptcy case.'" Id. (quoting 3G Properties, 2010 WL 402770, at *3).  Here, the adjudication of the bankruptcy case will not be affected because it is already closed.  Thus, the court finds that the matter can be timely adjudicated in state court under the sixth factor.

Therefore, because all of the six factors above are met, the court must abstain from adjudicating the present action under 28 U.S.C. § 1334(c)(2).

### 2. Discretionary Abstention Under 28 U.S.C. §§ 1334(c)(1) and 1452(b)

Even if the court were to find that mandatory abstention does not apply, under these circumstances, the court would exercise its discretion to abstain under 28 U.S.C. § 1452(b) and § 1334(c)(1).  The Bankruptcy Court for the District of South Carolina has adopted the following twelve factors to consider when deciding whether to exercise discretionary abstention:  (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main

bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties. Am. Investors Life Ins. Co. v. Salinas, 353 B.R. 124, 128 (Bankr. D.S.C. 2006) (citing Dunes Hotel Assocs. v. Hyatt Corp., 1996 WL 33340785, at *7 (Bankr. D.S.C. July 11, 1996)). These factors are not binding but are rather intended to be instructive in guiding the court's discretion. In re Bi-Lo, LLC, No. 08:10-cv-02159, 2010 WL 3938406, at *2–3 (D.S.C. Oct. 5, 2010).

      First, because the bankruptcy case is closed, there will be no effect on the efficient administration of the estate if the court abstains. Second, state law entirely predominates over bankruptcy issues because plaintiffs assert only state law causes of action and any facts relating to the bankruptcy case are incidental to adjudication of the state law claims. Third, at this time, there does not appear to be any difficulty or unsettled nature of the applicable state law. Fourth, although there are four other actions pending in various states, there do not appear to be any related proceedings commenced in this South Carolina state courts or other non-bankruptcy court. Fifth, as fully set forth above, there is no jurisdictional basis other than 28 U.S.C. § 1334. Sixth, the present matter is only tangentially related to the bankruptcy case. Seventh, as discussed above, there are no "core" proceedings. Eighth, because the bankruptcy case is closed, the feasibility issue is inapplicable. Ninth, because the bankruptcy case is closed, the burden on the bankruptcy

court's docket is irrelevant. The tenth factor is similarly inapplicable because the plaintiffs did not file the present action in bankruptcy court, and issues of forum-shopping have not been raised. Eleventh, plaintiffs do have a right to a jury trial because they bring state-law tort claims. Lastly, there are non-debtor parties involved in the proceedings.

Because almost all of the aforementioned factors heavily favor exercising the court's discretion to abstain, the court alternatively finds that discretionary abstention under §§ 1334(c)(1) and 1454(b) would be appropriate, even if mandatory abstention pursuant to § 1334(c)(2) were inapplicable.

## IV.   CONCLUSION

For the reasons set forth above, plaintiffs' motion is **GRANTED**. The court **ABSTAINS** from exercising jurisdiction and **REMANDS** the case to the Court of Common Pleas for Charleston County.

**AND IT IS SO ORDERED**.

                **DAVID C. NORTON**
                **UNITED STATES DISTRICT JUDGE**

**November 24, 2015**
**Charleston, South Carolina**